**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JPC MERGER, SUB, LLC d/b/a JERSEY
PRECAST

               Plaintiff,

     v.

ALTERRA AMERICAN INSURANCE
COMPANY,

               Defendant.

_____

Case No. 14-4909 (FLW) (LHG)
**OPINION**

Presently before the Court is a Motion for Summary Judgment, made by Defendant Alterra American Insurance Company ("Defendant" or "Alterra"). Plaintiff JPC Merger, Sub, LLC, d/b/a Jersey Precast ("Plaintiff" or "JPC"), asserted a claim under its insurance policy with Alterra for the disappearance of property from a storage facility, which Alterra denied. JPC then filed a three-Count Complaint with this Court, asserting the following causes of action: (1) declaratory judgment that the loss was covered; (2) breach of contract; and (3) violation of the implied covenant of good faith and fair dealing. Although no discovery has been conducted, Alterra seeks summary judgment on all counts, asserting that JPC cannot show that the property loss occurred within the policy period, or, alternatively, that the loss falls within the policy's "missing property" exclusionary clause. JPC opposes the Motion, and seeks discovery under Fed. R. Civ. P. 56(d).

1

For the reasons expressed herein, the Motion for Summary Judgment is granted in part and denied in part. Although the evidence presented to the Court on this Motion, prior to any discovery being taken, suggests that the loss may not be covered by the policy, the Court finds that the motion is premature as to Counts 1 and 2, and Plaintiff is entitled to discovery. However, with regard to Count 3, the violation of the implied duty of good faith and fair dealing, summary judgment is granted in favor of Defendant Alterra.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendant Alterra America Insurance Company ("Alterra") provided Plaintiff JPC Merger, Sub, LLC, d/b/a Jersey Precast ("JPC") an "all-risk" insurance policy for the period of June 10, 2012 to June 10, 2013. Defendant's Rule 56.1 Statement of Material Facts (hereinafter "SMF") ¶ 1; *see also* Certification of Andrew C. Jacobson, Ex. A (hereinafter "Policy"). The policy only provides coverage where a loss "occurs during the policy period." Policy at 13 of 13.[1] Additionally, the Policy details several "perils excluded," which are situations where an otherwise qualifying loss within the policy period would not be covered by the policy. *Id.* at 6 of 13. Specifically, the "Missing Property" exclusion is relevant to this dispute and states the following:

> "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property.
>
> [*Id.* at 7 of 13.]

---

[1] The Policy contains multiple documents, and the page numbering restarts on each document. Accordingly, the page numbers herein include the total pages in the relevant document, to clarify where in the Policy the statement is located.

JPC is a business that manufactures precast concrete products for construction. Pl.'s Am. Compl. ¶ 1. JPC currently leases a storage facility in Bayonne, New Jersey, which is part of the Duraport Marine & Rail Terminal. SMF ¶ 4, Pl. Response to Statement of Material Facts (herein after "Pl. Response") ¶ 5.This facility is classified by the U.S. Coast Guard as a "MARSEC Level 1 Site," meaning that specific security measures are taken to safeguard the location, including: concrete walls and fences surround the property; it is accessible only by key after hours and on weekends; and it is monitored by video surveillance. SMF ¶¶ 6–8.  On April 13, 2011, 57 steel plates, each weighing about 2,600 pounds, were delivered to this storage facility. Pl.'s Am. Compl. ¶ 10–11.

On July 6, 2012, Antonio Ayala, a JPC employee, was sent to the storage facility in Bayonne where he discovered 18 large metal rigging chains and 57 steel plates were missing. SMF ¶¶ 10, 12. The missing property totaled a combined weight of approximately 120,000 pounds. Pl.'s Am. Compl. ¶ 14. Ayala reported this missing property to JPC who then sent Michael Stahr, the storage facility's site superintendent, to investigate the loss. SMF ¶ 11. Stahr's investigation confirmed that the chains and the steel plates were missing from the storage location, along with additional missing property, including: 10 crane cable rolls, 2 air compressors and a trailer. *Id.* ¶¶ 12–13. After finding no evidence of forced entry, or that any employee could have taken the property, and after speaking with the landlord of the site, Stahr then contacted the police. *Id.* ¶¶ 17–19. The police reported to the site on July 18, 2012, and completed an incident report for burglary and theft of the missing property, listing the date of the loss as between May 2, 2012 and July 13, 2012. Pl. Am. Compl. Ex. 4 (ECF No. 9-4).

Following Stahr's investigation, on April 26, 2013, JPC submitted a Sworn Statement in Proof of Loss to Alterra, seeking coverage for the missing property in the amount of $201,219.00

reimbursement plus the "processing and other costs incurred by [JPC] relative to the materials prior to their delivery to the site." Pl.'s Am. Compl. ¶ 28; SMF ¶ 14.  In an affidavit attached to JPC's Sworn Statement in Proof of Loss JPC's owner Aamir Hashimi stated that the loss "occurred between December 15, 2011 and July 6, 2012." SMF ¶ 15.

On August 14, 2013, pursuant to the terms of the insurance policy, Alterra conducted an Examination Under Oath of Michael Stahr. *See* Certification of Andrew C. Jacobson, Ex. C (hereinafter "Stahr Dep."). During this examination, Stahr was asked when the loss occurred and he responded that he had "no idea" what the specific date of the loss was. SMF ¶ 16. Further, when Stahr was asked if anyone at JPC knew when the items disappeared he responded, "nobody knows." *Id.* In addition, Stahr's investigation also found no evidence of forced entry as he explained:

> Q. There was no forced entry that you're aware of, correct?
> A. Not that I'm aware of.
> Q. And the police report gives no indication of forced entry. Is that correct?
> A. That's correct.
> Q. During your investigation, did you notice any forced entry?
> A. On any of Duraport's property, no.
> Q. No cut fences or breech of the gates?
> A. No.
> Q. And there were no logbooks, correct?
> A. No.

Stahr Dep. at 78:24–25, 79:1–11. Stahr also testified that he spoke with two employees of Duraport, the location's landlord company, who both replied "I don't know what to tell you" when he inquired about the location of the missing plates, and responded "no" when asked if Duraport moved the property. *Id.* at 57:17–19, 58:5–9.

On November 21, 2013 Alterra denied JPC's claim for reimbursement of the missing property pursuant to the insurance policy's "Missing Property" exclusion. SMF ¶ 27. Following this denial, on August 4, 2014, JPC filed a Complaint in state court against Alterra; Alterra

removed the case to this Court on August 4, 2014. On October 2, 2014 JPC filed an Amended

Complaint, asserting the following causes of action: Count 1, declaratory judgment that JPC's

claim was covered under the Policy; Count 2, breach of contract; Count 3, violation of the

implied covenant of good faith and fair dealing. In addition to the facts described above, the

Amended Complaint alleges that Duraport also leases space in the same facility to a scrap metal

business and theorizes that, due to the proximity of the scrap metal storage to the missing

property, cranes at the Duraport site may have accidently moved JPC's missing property onto a

barge as scrap metal. Pl.'s Am. Compl. ¶¶ 18, 21, 24, 25.

On January 23, 2015, Alterra filed the present Motion for Summary Judgment, prior to

the undertaking of any discovery. JPC opposes the Motion, and requests that discovery be

conducted in this matter.


**STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The party requesting summary judgment must show that a material fact is not genuinely

disputed by "citing to particular materials in the record" or by "showing that the materials cited

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact." Id. at 56(c). For an issue to be genuine, there

must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving

party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). For a fact to be material, it must have the ability to

"affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the evidence which "demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once that burden is met, the non-moving party has the "burden of producing in turn evidence that would support a jury verdict." Anderson, 477 U.S. at 256. To determine whether a genuine issue exists, the court must view the facts, and all reasonable inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276–77 (3d Cir. 2002).

**DISCUSSION**

Alterra presents two arguments in support of its motion for summary judgment. First, Alterra argues that JPC has not shown that the loss occurred during the policy period. Second, Alterra contends that the loss falls under the "mysterious disappearance" exclusion, as, up to this point, there is no evidence as to what happened, and JPC's employees have testified to the lack of evidence.  JPC disagrees with Alterra's assertions, and requests an opportunity to take discovery to find evidence to support its theory that the property was accidentally transported away by barge.

**A. Rule 56(d)**

Fed. R. Civ. P. 56(d) provides that:

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
    (1) defer considering the motion or deny it;
    (2) allow time to obtain affidavits or declarations or to take discovery; or
    (3) issue any other appropriate order.

6

In the Third Circuit, a motion for additional discovery under Fed. R. Civ. P. 56(d) will ordinarily be granted if the moving party submits an affidavit including the following information: "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Pennsylvania Dep't of Pub. Welfare v. Sebelius,* 674 F.3d 139, 157 (3d Cir. 2012) (quoting *Dowling v. City of Philadelphia,* 855 F.2d 136, 139 (3d Cir.1988)). The information sought through further discovery must include "specific facts" that will be revealed through discovery; "[v]ague or general statements of what a party hopes to gain through a delay for discovery under Rule 56(d) are insufficient." *Malouf v. Turner*, 814 F. Supp. 2d 454, 460 (D.N.J. 2011). However, the requirements of Rule 56(d) are applied less stringently when no meaningful discovery has taken place. *See Nagy v. Consol. Servs. Grp., Inc.*, Civ. No. 09-1756 (MLC), 2009 WL 1586948, at *5 (D.N.J. June 3, 2009); *Reed v. Staniero*, Civ. No. 06–3496, 2007 WL 3430935, at *7 (D.N.J. Nov.13, 2007); *Mars, Inc. v. Coin Acceptors, Inc.*, Civ. No. 90–49, 1994 WL 16471243, at *2 (D.N.J. June 27, 1994).

Here, JPC has filed an affidavit explaining that it seeks the following discovery:

a. Depositions of the Duraport owner and employees identified in JPC's initial disclosures that may be able to provide additional information regarding:
    i. The security for the facility,
    ii. The scrap metal operator,
    iii. The crane operator,
    iv. The list of barges that may have visited or taken material from the site during the relevant time period;
b. Subpoenas to Duraport and/or the scrap metal operator or other third parties to identify
    i. The crane operator,
    ii. Barge operator's ship manifestos or records;
    iii. And another records that would indicate when and by whom scrap metal was removed from the Site between the dates in question;
c. Depositions of Alterra's investigator(s);
d. Interrogatories to Alterra regarding its investigation(s);
e. Requests for Alterra's investigation files beyond those disclosed by Alterra;

    f.   Depositions/requests for documents to any of the scrap metal operator's employees;

    g.   Depositions/requests for documents to the crane operator;

    h.   Depositions/request for documents of the barge operator(s); and any other discovery that may be necessitated by the results of any of the foregoing.

Alterra asserts generally that JPC should not be entitled to discovery. Alterra specifically objects to JPC's alleged need to "identify and depose the operator of the crane at the site." According to Alterra, this is unnecessary because the crane at the site was JPC's crane, and its crane operator, Mr. Ayala, has already stated that he did not know what happened to the missing property. Indeed, in Mr. Stahr's deposition, he stated that JPC kept a crane at the site. Stahr Dep. 61:4–5, 63:9–10. However, JPC specifically alleges that "during 2012, a crane was operating at or near the Site and was loading scrap metal onto waiting barges that had moored at or near the Site." Pl. Opp. at 4; *see also* Compl. ¶ 23. As JPC is not involved in loading scrap metal, the crane for which JPC seeks to obtain discovery is not its own crane.

The primary question, therefore, is whether the discovery sought by JPC could preclude summary judgment.[2] Accordingly, in each section below, I will examine whether JPC's request for discovery could prevent summary judgment on that issue.

**B. The Policy Period.**

Alterra asserts that JPC has not, and cannot, show that the property went missing during the policy period. According to Alterra, the affidavits and testimony of JPC's owner and employees show that JPC "has no idea when the alleged theft occurred, let alone whether [it] occurred during the Altera Policy period of June 10, 2012, to June 10, 2013." Pl. Br. at 8.

---

[2] Although Alterra argues that JPC should have conducted discovery of its own accord, even after the filing of Defendant's summary judgment motion, in light of the short period of time between the filing of a discovery plan and the motion for summary judgment, an expectation that discovery could have been conducted against third parties is unreasonable.

The burden is on the insured to present evidence to establish that the claimed loss fell within the relevant insurance policy. *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 245 F. Supp. 2d 563 (D.N.J. 2001) *aff'd*, 311 F.3d 226 (3d Cir. 2002); *Cobra Prods. v. Federal Ins. Co.*, 317 N.J. Super. 392, 401 (App. Div. 1998). In this case, the burden is on JPC to prove that the alleged missing property disappeared from their storage facility during the Alterra policy period of June 10, 2012 to June 10, 2013.

JPC makes three arguments against summary judgment on this point. First, JPC asserts that the "manifest trigger" rule applies here, meaning that the time of loss is when the insured becomes aware of the loss—that is, July 6, 2012, a date within the policy period. JPC Opp. at 7–8. Second, JPC argues there is a material dispute as to the actual date of loss, and that some evidence exists as to the date of loss. *Id.* at 9. Third, JPC contends that Alterra "previously determined that this was a loss within the policy" because in the letter declining coverage, Alterra "did not contend there was no covered loss." *Id.* at 10.

First, JPC argues that, under the "manifest trigger" rule, the date of loss should be considered July 6, 2012, the date the loss was discovered. The manifest trigger rule states that a loss occurs "when[] the loss becomes manifest." *Winding Hills Condominium Ass'n, Inc. v. North Am. Specialty Ins. Co.*, 332 N.J. Super. 85, 92 (App. Div. 2000).  However, in New Jersey, this rule has only been applied in limited circumstances. Specifically, "[t]he manifest trigger rule, rather than the continuous loss trigger, applies to first-party property insurance coverage **for progressive loss**; prior to the manifestation of damage, the loss is still a contingency, and the insured has not suffered a compensable loss." *Id.* In other words, "**in first party progressive property loss cases**, when . . . the loss occurs over several policy periods and is not discovered until several years after it commences, [then] the manifestation rule applies." *Id.* at 93 (emphasis

added) (quoting *Prudential-LMI Com. Ins. v. Superior Court*, 798 P.2d 1230, 1246 (1990), <u>as modified</u> (Dec. 13, 1990)).

Indeed, the cases JPC cites are progressive property loss cases involving asbestos contamination, soil subsidence damage and soil contamination. *Winding Hills Condo. Ass'n, Inc. v. N. Am. Specialty Ins. Co.*, 332 N.J. Super. 85 (App. Div. 2000) (insured brought action against property insurers for declaratory judgment that a continuous trigger of coverage applied to foundation damage to buildings over several policy periods); *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins.Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (Insured brought state-court action against property insurers to recover cost of asbestos abatement); *Owens-Illinois v. United Ins. Co.*, 138 N.J. 437 (1994) (Asbestos-product manufacturer sought declaratory judgment that its two insurance carriers provided coverage for asbestos-related personal injury and property damage claims).

The present dispute is not a progressive property loss case where a "loss occur[ed] over several policy periods and [was] not discovered until several years after it commences." *Winding Hills*, 332 N.J. Super. at 92.  In contrast, JPC's property disappeared, apparently all at once, and was discovered a matter of months, not several years, after the disappearance. According to JPC's owner, the loss occurred at some point between December 15, 2011 and July 13, 2012, while the policy was effective from June 10, 2012 to June 10, 2013 and the loss was discovered on July 6, 2012. Accordingly, the "manifest trigger" rule does not apply.

JPC next asserts that summary judgment is inappropriate on this issue because there is a material dispute as to the date of the loss, and JPC has yet to conduct discovery. Pl. Opp. at 9. JPC further notes that there is some proof regarding the date of loss, specifically aerial photographs that demonstrate that the missing property was on the storage site as late as April

10

19, 2012 and the police report, which indicates the date of loss between May 1, 2012 and July 6, 2012. *Id.* Alterra, however, moves pursuant to Fed. R. Civ. P. 56(c)(2) to strike the photos,[3] which are attached to Plaintiff's Opposition brief as Exhibit B, and Plaintiff's Opposition Exhibit A, a print-out of a website describing "transloading." In a summary fashion, Alterra asserts that these documents are inadmissible hearsay and are not properly authenticated under Fed. R. Evid. 901(a).

Only evidence that would be admissible at trial may be considered in ruling on a motion for summary judgment. Fed. R. Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 471 (3d Cir.1989) (Garth, concurring); *Countryside Oil Co. v. Travelers Ins. Co.*, 928 F. Supp. 474 (D.N.J. 1995). Federal Rule of Evidence 901(a) states: "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). However, the evidence need not be "in a form that would be admissible at trial in order to avoid summary judgment," so long as the evidence conforms to "the kinds of evidentiary materials listed in Rule 56(c)." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Here, both Exhibits are attached to the Certification of Seth R. Tipton, Esq., who states that he has "personal knowledge of the facts set forth," as required by Fed. R. Civ. Proc. 56(c)(4). To be admissible at trial, testimony would likely be required to show that these documents are "what the proponent claims," *see, e.g.*, *U.S. v. McNair*, 439 F. Supp. 103, 105 (E.D.Pa.1977) (finding that the requirement for authentication of a photograph may be satisfied by testimony of a witness with knowledge that the photograph is what it is claimed to be), but at

---

[3] Exhibit B, consists of several satellite photographs that allegedly show the missing items as not visible on April 9, 2011, but visible on July 11, 2011, December 24, 2011, April 16 2012, and April 19, 2012.

this stage in the proceedings, these documents may be considered.

However, the admissibility of Plaintiff's Exhibits is not dispositive, because these documents do not prove that the missing property was present during the policy term.  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be *no genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Here, the only photograph provided during the policy period, dated September 7, 2012, does not show the same property that is circled and identified in the other photographs. Rather, the photograph states, "missing plates observed." The last photograph that actually depicts the alleged missing property is from April 19, 2012, which is approximately two months before the Alterra policy took effect. Similarly, the police report states that the loss occurred between May 1, 2012 and July 13, 2012, which includes a gap of about one month before the policy took effect. Moreover, the incident investigator, Mr. Stahr, stated in his deposition that he had "no idea" when the property disappeared.

In a case with similar facts, *Sylvan Paper Corp. v. R. Horizon Warehouse*, Civ. No. 04-3179 JAP, 2005 WL 7853502 (D.N.J. Nov. 23, 2005), the court granted summary judgment, when "approximately 300,000 pounds of Sylvan's paper stock" went missing around the time of transportation to a new warehouse; however, the insurance policy terminated immediately upon the closing of the previous warehouse. *Id.* at *1. At the deposition of Sylvan's CEO, when asked when the alleged theft took place, he answered, "I have no idea." *Id.* at *3. In addition, "Plaintiff

claim[ed] that its inventory records and those of R. Horizon indicate that the paper was present at the [old] warehouse prior to the mass removal and never officially removed from the warehouse to Sylvan's new warehouse." *Id.* Nonetheless, the court found that there was no evidence to prove that the loss occurred within the applicable insurance policy period. *Id.*

Here, the evidence currently provided does not definitively establish whether the loss occurred during the policy period—the photographs, police report, and statements of JPC personnel all indicate that the loss might have occurred either before (sometime after April 19 but before June 10, 2012) or during the policy period (after June 10 but before July 13, 2012). Moreover, I note that the *Sylvan* decision, on which Defendant relies, occurred after the parties had completed "extensive . . . discovery in this matter," only after which it was "still unclear as to when and where" the property went missing. Here, in contrast, no discovery has taken place, and JPC seeks the opportunity to further investigate the matter.

The question, then, is whether the discovery sought by JPC would preclude summary judgment on this issue—that is, if the discovery sought by JPC could show that the loss occurred within the policy period. JPC has requested, *inter alia*, the opportunity to depose and request documents from the Duraport owner and employees. Such depositions and document requests could include the scrap metal operator, the crane operator, or the operator of the barges which took scrap metal from the site; these persons could potentially provide testimony or records which would show when, precisely, the property was removed from the site. Accordingly, I find that summary judgment on this issue is premature.

Finally, I note that JPC asserts that Alterra, in the letter declining coverage, did not assert that the loss was not covered by the Policy. This argument is essentially one of waiver; however, the November 13, 2013 letter states that "The failure to raise other terms and conditions of the

Policy should not be deemed a waiver of the Alterra's right to do so in the future." *See* Am. Compl. Ex. D (ECF No. 9-6). Thus, Alterra cannot be said to have waived the right to assert that the loss did not fall within the policy period.

Summary judgment on the issue of whether the loss fell within the property period is therefore denied.

### B. Missing Property Exclusion

Alterra further asserts that the "missing property" exclusion in the policy precludes coverage for the loss here. As noted, this exclusion provides that Alterra will not "pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property." Policy at 7 of 13, 23 of 31.

JPC asserts that Alterra has the burden of proving that the case falls into the missing property exclusion. Pl. Opp. at 14. According to JPC, New Jersey precedent requires Alterra to set forth proof that the loss is "unexplained" or "mysterious" and that "there is no physical evidence to show what happened," and that Alterra has not done so. *Id.* at 14–15. Alterra does not deny that it has the burden of proof to show that an exclusion applies, but asserts that JPC has not made a prima facie case for coverage. Def. Repl. at 6–7. Alterra further contends that, even if JPC has made such a case, the complete lack of evidence to show what happened to the missing property, as testified to by JPC's employee, Stahr, suffices to meet Alterra's burden.

JPC relies heavily on a New Jersey Appellate Division case, *Advance Piece Dye Works, Inc. v. Travelers Indemn. Co.*, 64 N.J. Super. 405 (App. Div. 1960). In that case, seventeen cartons of textiles were discovered to be missing; upon investigation, the plaintiff discovered that

some time earlier, "one of its employees had discovered three or four empty cartons in the storage room, with broken tapes indicating that they had held finished goods." *Id.* at 409. The insurance policy excluded "mysterious disappearances" as well as dishonest acts of the company's employees. *Id.* at 407. The trial court had concluded that "plaintiff's proof reasonably supports the conclusion that the goods were stolen," and also suggested that the cartons may have been misdirected in shipment; both theories would have been covered by the policy. *Id.* at 411. Nonetheless, the trial court dismissed the case, finding that the plaintiff had failed to show conclusively that the loss was covered. *Id.* at 410. The Appellate Division reversed, stating that "[t]here was a loss, and it was established by positive evidence. The assured did not have to go further to demonstrate that such loss was [n]ot caused by one of the excepted conditions. . . . [T]he insurer had the burden of establishing that." *Id.* at 413 (quoting *Jewelers Mutual Ins. Co. v. Balogh*, 272 F.2d 889, 892 (5th Cir. 1959)).

JPC argues that *Advanced Dye* is "dispositive here." Pl. Opp. at 14. However, *Advanced Dye*, while clarifying where the burden of proof lies, does not explain how an insurer may meet its burden of establishing that a loss falls within a "missing property" exclusion; the same is true of *Balogh*, which JPC also quotes extensively. Indeed, in *Advanced Dye*, the defendant insurer did not put on any evidence—the trial court entered judgment against the plaintiff following the plaintiff's presentation of its case. *Id.* at 407. In contrast, more recent cases in this District have examined the evidence necessary to show that a loss falls within such an exclusion.

Again, *Sylvan Paper Corp. v. R. Horizon Warehouse*, is relevant here. In that case, the relevant insurance policy included an exclusion for "any unexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory." 2005 WL 7853502 at *1. While the *Sylvan* plaintiff argued that the missing paper was stolen, the defendant presented several

possible scenarios under which the paper could have disappeared:

> There was a clerical mistake in recording or inventory and accordingly, no Sylvan paper went missing; (2) an R. Horizon employee stole the paper; (3) a Sylvan employee stole the paper; (4) an unrelated third-party stole the paper; or (5) the paper was mistakenly sent to or taken by the wrong customer during the chaos in the aftermath of the R. Horizon warehouse closing.

*Id.* at *3–4. Moreover, Sylvan's CEO, when deposed, stated that he "had no idea" when the paper was stolen, who stole it, or how it was stolen. *Id.* at *5. The court, considering this evidence, found that, because "the circumstances surrounding the loss were purely speculative," the loss fell within the "mysterious disappearance" exclusion of the insurance policy, and therefore recovery was barred. *Id.* The court reasoned "because of the various plausible scenarios to describe the missing paper, this is precisely the type of situation that the mysterious disappearance exclusion was designed for." *Id.*; *see also Trademark Plastics Corp. v. Hartford Fire Ins. Co.*, 2015 U.S. Dist. LEXIS 41113, *1-2 (D.N.J. Mar. 31, 2015).

The instant case presents a similar dispute: JPC discovered the lost property under conditions where it was unaware of how it disappeared, albeit JPC has presented a possible explanation of what happened. Mr. Stahr, the site superintendent who was responsible for investigating JPC's loss, stated in his deposition that he did not have any leads to explain how the property was taken or how it disappeared. Stahr Dep. at 80:22–24. He further testified that he found no physical evidence indicating what happened. *Id.* at 81:8–18. Mr. Stahr also conceded that neither he nor anyone employed by JPC had any explanation for how the property disappeared. *Id.* at 83:7–13.

JPC nonetheless argues that *Sylvan* is not on all fours here. Specifically, JPC contends that, in *Sylvan*, "the critical point . . . [was] the sheer number of 'plausible scenarios to describe the missing paper.'" Pl. Opp. at 16. Here, JPC points out, Alterra has not offered any plausible

16

scenarios for the loss. *Id.* at 17. However, other cases have found in favor of the insurer, even where there have not been multiple plausible scenarios for the loss. For example, in *Trademark Plastics Corp. v. Hartford Fire Ins. Co.*, Civ. No. 13–5039 (SDW) 2015 WL 1472305, *2 (D.N.J. Mar. 31, 2015), the plaintiff company speculated that the inventory had been stolen and in a letter to the insurance company, the plaintiff stated that the ""[t]he evidence of theft is that everything is gone when there should have been more than 300,000 pounds of resin on hand. Everything was gone and the only explanation is that someone had stolen it." *Id.* The court, however, noted that courts in other states have applied "mysterious disappearance" exclusions even when theft "'appeared to be the only reasonable' inference from the facts." *Id.* at *6 (citing *C.T.S.C. Boston, Inc. v. Continental Ins. Co.*, 25 Fed. App'x 320, 325 (6th Cir. 2001).

Moreover, in the *Trademark* case, a clause in the "missing property" exclusion stated, "[w]e will not pay for loss caused by, resulting from, or arising out of the disappearance of property *when there is no clear evidence to show what happened* to it." The court defined "clear evidence" as "[e]vidence which is positive, precise and explicit, which tends directly to establish the point to which it is adduced and is sufficient to make out a prima facie case." *Id.* at *5 (quoting *Black's Law Dictionary* 251 (6th ed.1990)). The *Trademark* court ultimately found that "[t]he facts given by Plaintiff were susceptible to inferences other than theft, and worse still, they do not provide 'clear evidence of what happened' to the missing inventory. Therefore, Defendant is entitled to summary judgment." *Id.*

Here, the "missing property" clause similarly includes a provision which excludes coverage "where there is no physical evidence to show what happened to the covered property"—a clause even more restrictive than that at issue in *Trademark*. Policy at 23 of 31. Other courts have strictly interpreted exclusion policies which required "physical evidence of

loss." For example, in *C.T.S.C. Boston, Inc.*, the Sixth Circuit stated that, in a policy containing a similar clause, the insurer was "not obligated to pay claims for missing property when there is 'no physical evidence to show what happened to it.' To date, [the insured] has produced no physical evidence to show what happened to the missing laptops." 25 Fed. App'x at 320. In an Ohio cause, *Will Repair, Inc. v. Grange Ins. Co.*, 15 N.E. 3d 386 (Ct. App. Ohio 2014), the court stated that a 'physical evidence' requirement "simply requires some 'physical evidence" of what happened to the missing property," such as, in the case of a theft, "a security alarm is triggered in connection with a loss, property damage such as broken doors, windows, or locks are found in connection with missing property, items used in connection with a suspected third-party theft are left behind, or the insured has some documentation establishing how and when covered property likely disappeared." *Id.* at 393. The Supreme Court of Delaware has held that "physical evidence" does not include testimony, but requires an "article, object, document, record or other thing of physical substance." *Nat'l Grange Mut. Ins. Co. v. Elegant Slumming, Inc.*, 59 A.3d 928, 931 (Del. 2013). Further, a New York court has examined a policy which required, as here, not only "physical evidence", but evidence that "showed what happened" to the missing property. *WestCom Corp. v. Greater New York Mut. Ins. Co.*, 41 A.D.3d 224, 226, (N.Y. Sup. Ct. App. Div. 2007) The court found that the discovery that "the unit's padlock was jammed with a broken-off key" was insufficient "physical evidence" because "unit remained secured by the jammed padlock" and therefore the jammed lock did "noting to 'show what happened to' the missing property." *Id.* at 227.

Again, however, JPC seeks discovery to determine what happened to the missing property, and the determination turns on the question of whether the requested discovery would preclude summary judgment. As noted above, deposition and document requests of Duraport

employees, leading to the scrap metal operator, could result in a determination that, as JPC alleges, the property was removed by barge. Moreover, JPC intends to issue requests for documents to the scrap metal operator, the crane operator, and the barge operator; such requests could result in records showing if and when the property was removed from the site. Records would constitute "physical evidence" which "show what happened" to the missing property. Accordingly, JPC's request for discovery could defeat summary judgment. Thus, I find that summary judgment on the issue of the "missing property" exclusion is premature, and on this question, the motion is denied.

### C. Implied Covenant of Good Faith and Fair Dealing

Alterra asserts that it is additionally entitled to summary judgment on Count 3, alleging a violation of the implied covenant of good faith and fair dealing. Alterra argues that, because Plaintiff cannot establish its right to summary judgment as a matter of law, Alterra did not act in bad faith in denying the claim. Def. Br. at 13. JPC argues, however, that "Alterra cannot defeat JPC's claim by moving for summary judgment . . . before any meaningful discovery has been conducted and then cite as the reason for its summary judgment motion the lack of facts that JPC has in support of its claim." Pl. Opp. at 19.

In New Jersey, insurance policies, like all other contracts, are subject to an implied duty of good faith and fair dealing. *Pickett v. Lloyd's*, 131 N.J. 457, 467 (1993). An insured may pursue a cause of action for consequential damages against an insurer for a bad faith failure to pay benefits to which the insured is entitled pursuant to the policy. *Id.* at 461. Two elements are required for a plaintiff to succeed on a bad faith insurance claim: (1) that the insurer lacked a "fairly debatable" reason for denying benefits under the policy; and (2) that the insurer knew or recklessly disregarded its absences of reasonable basis for denying the claim of coverage.

*Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004) (citing *Pickett*, 131 N.J. at 481). In the context of denial of benefits, the "fairly debatable" standard means that "a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim." *Pickett*, 131 N.J. at 473. Moreover, "[b]ad faith or ill motive is an essential element of a claim for breach of the implied covenant of good faith and fair dealing." *Coldwell Banker Real Estate, LLC v. Plummer & Associates, Inc.*, Civ. No. 09–1313SRC, 2009 WL 3230840, at *4 (D.N.J. Oct.2, 2009); *see also Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 182 N.J. 210, 231 (2005) ("[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive.").

Here, JPC is unable to make out a violation of the implied duty of good faith and fair dealing because Alterra's reason for denying the claim—that JPC could not show that the loss occurred within the Policy period, and that the loss falls within the "missing property" exclusion—is, at least, "fairly debatable." The evidence presented by JPC, even now, demonstrates that the loss may have occurred either prior to the Policy period, or during a limited window within the Policy period. Further, while JPC has offered a plausible explanation for the loss, at the time the claim was investigated, there was no "physical evidence" to "to show what happened" to the property, as required by the Policy. Accordingly, Alterra had a reasonable basis on which to deny the claim, and so did not violate their implied duty of good faith and fair dealing. Thus, summary judgment on the bad faith claim (Count 3) is granted.

**CONCLUSION**

For the reasons expressed herein, the Motion for Summary Judgment is denied in part

and granted in part. Specifically, the Motion for Summary Judgment on Count 3, violation of the implied covenant of good faith and fair dealing, is granted; all remaining parts of the Motion are denied. An appropriate Order shall follow.

Date:   Aug. 13, 2015                                              /s/ Freda L. Wolfson_____
                                                                          Hon. Freda L. Wolfson, U.S.D.J.